Morris **DUBIN**

v.

**UNITED STATES.**

No. 68-55.

United States Court of Claims.

May 3, 1961.

**652**

George I. Harris, New York City, for plaintiff. Burke & Burke and Frank X. O'Donnell, Jr., New York City, were on the briefs.

Martin E. Rendelman, Chevy Chase, Md., with whom was Asst. Atty. Gen., William H. Orrick, Jr., Washington, D. C., for defendant. Parker J. Stone, was on the briefs.

MADDEN, Judge.

In August, 1950, the plaintiff had in his possession a large number of transmitter-receiver radar equipment units, direct current power units, and radio receivers. The Government, acting through officials of the United States Navy, required the plaintiff to turn possession of this property over to the Government. The plaintiff is suing the Government for $85,612.50, which, he asserts, was the fair market value of. the property. He says that, in the circumstances, there was a contract implied in fact that the Government would pay for the property. He says, in the alternative, that the property was taken from him for public use and that, under the Fifth Amendment to the Constitution of the United States, he is entitled to just compensation for the taking, and that just compensation would be $85,612.50.

We narrate the circumstances under which the plaintiff came into possession of the property. Some time before July 1, 1950, the Government announced a sale of Government surplus property to be conducted at Dayton, Ohio, from July 5 to July 11. The plaintiff went to Dayton, examined the property and entered sealed bids for certain lots of the property. The plaintiff was the high bidder for four lots. The Government accepted the plaintiff's bids and prepared contracts of sale on Government forms. The contracts were signed by the parties and the goods were delivered to the plaintiff. As to three of the four lots of goods, there has been no problem. The present suit relates to lot No. 23, and to certain other property bought by the plaintiff from other persons. The plaintiff paid $3,-

162.62 for lot No. 23, and paid the cost of its transportation from Dayton to New York.

When the bids were opened on July 11, the plaintiff learned that another bidder, Fair Radio Sales, had bought 80 direct current power units which were, in fact, accessories of the radar equipment units, 83 of which the plaintiff had bought in his lot No. 23. The plaintiff negotiated with Fair Radio Sales and bought the 80 power units for $1,600 and paid $173.86 freight to have them shipped to the plaintiff's warehouse in New York.

About August 10, 1950, the plaintiff purchased from Western International Company one Dynamotor-Power Unit.

During the latter part of July 1950 the plaintiff prepared a bulletin advertising for sale the goods described above. Some 11,000 of these bulletins were mailed to the trade. On August 16 a Mr. Redstone of the office of the Inspector of Naval Material at the New York Naval Shipyard, together with a Naval Intelligence Officer, came to the plaintiff's office and demanded that all sales and advertisements for sale, of the property here in question, cease. A few days later a Lieutenant-Commander who was a legal officer of the Naval District, asserted to the plaintiff that the property in question was "classified" and that the plaintiff's possession of it was in violation of the Espionage Act. On August 19th, 23d and 24th the property was taken by the Navy and receipts were given the plaintiff stating that the transaction was without prejudice to any rights of the plaintiff including the "full right to compensation therefor." The Korean police action had just commenced and the plaintiff was, naturally, alarmed at the suggestion of espionage, and for that reason allowed the Navy to take the property.

The plaintiff presented his claim for $85,612.50 to various officials of the Government. The claim was denied. The Government offered to refund to the plaintiff the purchase price of lot No. 23, which offer the plaintiff rejected. In its brief the Government in effect concedes that the plaintiff should be paid the cost to it of the property, and transportation charges.

The Government says that the plaintiff's claim is invalid, and gives a number of reasons for that conclusion. It says that the property was not subject to sale as surplus, because it was "classified," and a Navy regulation forbade the sale of classified material without prior mutilation. The Government does not give us any citation to any document classifying the particular property here in question, or property of that type. Further, a part of the property in question was not bought by the plaintiff from the Government. It was bought from third persons. As to the third lot in question we are not told whether the Government ever owned it.

The Government says that the plaintiff's contract of sale contained a "Use Warranty" paragraph warranting that he would not resell the purchased property at a profit. It says that the plaintiff's immediate offer of the goods for resale shows that he, at the time of his purchase, intended to violate this warranty and that his purchase was therefore invalid. This defense would apply only to the lot of goods purchased by the plaintiff from the Government.

The Government points to section 793 of the Espionage Act, 62 Stat. 736, 737, 18 U.S.C. (1946 ed., Supp. III) § 793, as it read at the time here in question. The Act said:

"Whoever, lawfully or unlawfully having possession of, access to, control over, or being intrusted with any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, willfully communicates or transmits or attempts to communicate or transmit the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it * * *

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

If this statute is applicable, it is important. It would seem that the items in question were "instruments" or "appliances" "relating to the national defense." The plaintiff says in his reply brief:

"Of course there is absolutely no proof on the instant motions that the property seized from the plaintiff was an instrument or appliance 'relating to the National Defense.'"

The plaintiff then goes on to argue that even if the goods did relate to the national defense, that might make the officer who sold the goods to the plaintiff a criminal, but would not impair the validity of the plaintiff's title to the goods and his right to compensation for the Government's taking of them.

■■■ The plaintiff's interpretation of the statute is too narrow. The statute says that if one "lawfully or unlawfully having possession * * * wilfully retains the same and fails to deliver it on demand to the officer * * * of the United States entitled to receive it" he shall be fined or imprisoned. Assuming, then, for present purposes, that the devices did relate to the national defense, the plaintiff, though lawfully in possession because of a mistake made by the Government employees at Dayton, had no right to keep possession of the property, and his keeping it, after its surrender had been demanded, would have been a serious crime. Nothing in Public Law 152 of the 81st Congress, 40 U.S. C.A. § 484(d) could be construed or could have been intended to protect a possessor of property covered by the quoted section of the Espionage Act. Section 484(d) says:

"A deed, bill of sale, lease or other instrument executed by or on behalf of any executive agency purporting to transfer title or any other interest in surplus property under this title shall be conclusive evidence of compliance with the provisions of this title insofar as concerns title or other interest of any bona fide grantee or transferee for value and without notice of lack of such compliance."

This section was intended to protect purchasers against the peril of failure on the part of the selling officers of the Government to take all the preliminary steps required by the statute to make the property available for sale to the public. It could not have been intended to make it lawful, in the face of the Espionage Act, for one to hold on to national defense devices which he had purchased because of a mistake on the part of the selling official.

The plaintiff urges upon us our decision in the case of Turney v. United States, 115 F.Supp. 457, 126 Ct.Cl. 202. So far as appears, there was no Espionage Act, at the time of the Turney controversy, comparable to the one here involved. The Government's brief in Turney contained this single statement on that subject:

" * * * here the radar was classified military equipment, the disposal of which might have caused criminal prosecution of any American who participated in such disposition, see 50 U.S.C. 32."

The statutory reference was to the 1946 edition of the United States Code, and the cited section covered only cases of persons who, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, communicate information or deliver articles to a representative of the foreign nation. The maximum punishment was set at 20 years' imprisonment in peacetime and death in wartime. There was nothing in 50 U.S.C. § 32 [1] which related to the facts of the Turney case, or of the instant case. There was nothing in the section which affected the interpretation of section 484(d), quoted above, herein, and relating to the title which one received when he purchased at a Government sale.

1. Now 18 U.S.C.A. § 794.

Persisting, then, in our assumption that we are dealing with devices relating to the national defense, the plaintiff's title and possession were completely vulnerable. All that was needed to destroy them was an official demand that possession be surrendered. The refusal of the demand would have been a serious crime. The plaintiff did not refuse. Was he entitled to compensation for the property which he surrendered? If a statute makes unlawful the possession of narcotics, or spirituous liquors, or firearms, and they are seized by lawful authority, the possessor is not entitled to compensation for their loss, unless a statute provides for compensation. We suppose that the same is true of national defense devices which it is unlawful to keep.

If the possessor who has no right to keep possession of the property has come into its possession as a result of a mistake by Government officials in selling the property to him, he has an urgent equity in the direction of getting a refund of his direct out-of-pocket expenditures in the abortive transaction. In the instant case that thought would apply to lot No. 23, which the plaintiff bought at the Government sale. We think it would also apply to the goods bought by the plaintiff from Fair Radio Sales which had just bought them at the same Government sale. We assume that the Government is willing to do what Government counsel in their brief say is "the most that plaintiff would be entitled to."

If there is a genuine controversy as to whether the articles here in question related to the national defense, so that the parties cannot stipulate the answer to that question, the case will have tc go to trial, the trial to be limited to that issue. If that issue is resolved without trial, the court will consider the case further upon motion of either party.

The motions of both parties are denied, with leave to renew in the event that a stipulation is made as to the relation of the articles in question to the national defense.

It is so ordered.

JONES, Chief Judge, and WHITAKER, LARAMORE and DURFEE, Judges, concur.