**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVINCI AIRCRAFT, INC.,
*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA;
MICHAEL CHRISTMAS, individual and
official capacity; RODNEY LEWIS,
individual and official capacity; JOEL
S. RUSSELL, individual and official
capacity; DOES, 1 through 10,
inclusive,
*Defendants-Appellees.*

No. 17-55719

D.C. No.
2:16-cv-05864-
CAS-JC

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted November 13, 2018
Pasadena, California

Filed June 12, 2019

Before:  Richard A. Paez, Barrington D. Parker,[*]
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Paez

---

## SUMMARY[**]

---

### Federal Tort Claims Act / *Bivens*

The panel affirmed the district court's dismissal of all of the claims of DaVinci Aircraft, Inc., alleging conversion and other common law torts against the United States and several U.S. Air Force employees; and remanded so that the district court may transfer the action to the Court of Federal Claims, if so requested.

U.S. Air Force agents seized ten military Global Positioning Systems antennas from DaVinci.  DaVinci sought damages under the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

In support of its abuse of process and conversion claims, DaVinci alleged that the United States and its agents conspired to fraudulently and wrongfully coerce DaVinci to

---

[*] The Honorable Barrington D. Parker, United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

surrender the antennas to the Air Force without due process or just compensation.

The panel held that DaVinci's abuse of process claim was barred by section 2680(c) of the FTCA, which bars any "claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 26 U.S.C. § 2680(c). The panel held that the exception applied even though the antennas were permanently, rather than temporarily, detained; and applied whether or not the property was seized as a part of a criminal investigation. The panel further held that because the antennas were not seized "solely" for the purpose of forfeiture, paragraphs (1)–(4) to section 2680(c) through the Civil Asset Forfeiture Reform Act of 2000 did not rewaive sovereign immunity to allow DaVinci's abuse of process claim. The panel held that the same logic applied to prohibit DaVinci's conversion claim because it was based on the allegedly illegal seizure of goods.

The panel held that at the very least, DaVinci could seek reimbursement for the price it paid for the antennas at the Court of Federal Claims. The panel further held that DaVinci could proceed in the Court of Federal Claims under the Tucker Act through a takings claim under the Fifth Amendment.

DaVinci sued individual defendants in their individual capacities. The panel held that because DaVinci voluntarily dismissed the case against the three named individuals and never amended the complaint to include any others, DaVinci's *Bivens* claims against the individual defendants were not part of this appeal and did not exist. The panel further held that the only remaining defendant remaining

was the United States, and the district court properly dismissed the *Bivens* claims against the United States for lack of subject matter jurisdiction.

## COUNSEL

Abraham Richard Wagner (argued), Law Offices of Abraham Wagner, Los Angeles, California; David M. Baum, Baum Law Corporation, Los Angeles, California; for Plaintiff-Appellant.

David Pinchas (argued), Assistant United States Attorney; Dorothy A. Schouten, Chief, Civil Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Defendant-Appellee.

## OPINION

PAEZ, Circuit Judge:

In 2014, United States Air Force agents seized ten military Global Positioning System ("GPS") antennas from DaVinci Aircraft, Inc. ("DaVinci"), allegedly under the guise of the Espionage Act, 18 U.S.C. § 793. DaVinci responded by filing this action alleging conversion and other common law tort claims against the United States and several U.S. Air Force employees. DaVinci seeks damages under the Federal Tort Claims Act ("FTCA"), ch. 753, Title IV, 60 Stat. 842 (codified as amended in scattered sections of 28 U.S.C.), and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

The FTCA allows parties to pursue certain claims against the United States in federal court for injury arising out of the negligent or wrongful conduct of any federal employee acting within the scope of the employee's employment. *See* 28 U.S.C. §§ 1346(b)(1), 2674, 2679(b)(1). This waiver of sovereign immunity is significant but limited with certain exceptions. *See* 28 U.S.C. § 2680. Separately, the Tucker Act grants exclusive jurisdiction to the Court of Federal Claims for actions "sounding in contract" against the United States. *Snyder & Associates Acquisitions LLC v. United States* (*Snyder*), 859 F.3d 1152, 1156 n.2 (9th Cir.), *opinion amended on reh'g*, 868 F.3d 1048 (9th Cir. 2017) (citing 28 U.S.C. § 1491(a)(1)). In this case, we must delineate between claims that must be filed in the district court and those that must be filed in the Court of Federal Claims.

The district court granted the government's motion to dismiss all of DaVinci's claims against the United States for lack of subject matter jurisdiction. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Although we affirm, we also remand so that the district court may transfer this action to the Court of Federal Claims, provided DaVinci so requests. *See McGuire v. United States*, 550 F.3d 903, 914 (9th Cir. 2008).

## I.

## A.

DaVinci is a California-based corporation that purchases and sells new and used parts in the aviation and aerospace industries. DaVinci's problems arose out of its acquisition and the U.S. Air Force's subsequent confiscation of ten GPS antennas for the AGM-158 Joint Air-to-Surface Standoff Missile ("the Antennas").

Ball Aerospace & Technologies, Inc. manufactured the Antennas under a subcontract from Lockheed Martin, a U.S. Air Force prime contractor. Under the subcontract, the Antennas were considered unclassified hardware and therefore not subject to the security requirements of the Department of Defense or U.S. Air Force for classified data and hardware. They did not require demilitarization and were authorized by the U.S. Air Force for public sale, excluding export, around March 2013. Avatar Unlimited purchased the Antennas from Lockheed Martin as part of a bulk sale of surplus parts, and then resold them to BPB Surplus, who then sold them to DaVinci for $3,000.

In September 2013, four agents from the U.S. Air Force Office of Special Investigations visited DaVinci's office to inspect and discuss the Antennas. After the inspection, Special Agent Laura Voyatzis demanded that DaVinci surrender the equipment. DaVinci refused to surrender the Antennas without the agents providing authority for their demands. When asked for the selling price, DaVinci quoted $1.25 million for the Antennas, after which the Special Agents left without further action.

Between April and June 2014, DaVinci corresponded with agents at Eglin Air Force Base over the Antennas. Contracting Officer Rodney Lewis initially offered $7,359 for the Antennas, but DaVinci declined and countered with a discounted price of $750,000 and later $600,000. DaVinci and the Air Force employees never agreed upon a price.

In September 2014, Special Agent Joel S. Russell and two Air Force Officers arrived at DaVinci's office and demanded that DaVinci surrender the Antennas under compulsion of law. Russell produced a letter dated a week earlier and signed by both Lewis and Michael Christmas, Special Agent in Charge of the Department of the Air Force,

Office of Special Investigations.  The letter stated that the "delivery of the said items by [DaVinci's owner] and DaVinci Aircraft is made under compulsion of law pursuant to 18 USC 793(d)[, the Espionage Act,] and is made without prejudice to any claims by [DaVinci's owner] and/or DaVinci Aircraft for their fair market value."

In response to Russell's demands and the threat of criminal prosecution for failure to comply, DaVinci surrendered the Antennas.  Russell provided a signed acknowledgment of "Receipt For Items Taken Under Compulsion" to DaVinci.  That same day, DaVinci delivered to Eglin Air Force Base an invoice for the Antennas in the amount of $1.25 million.

## B.

After exhausting the FTCA administrative process,[1] DaVinci filed a complaint in the district court against the United States, Christmas, Lewis, and 10 unnamed individual defendants in their official capacities.  The United States filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The United States argued that the district court lacked jurisdiction over DaVinci's tort claims because the confiscation fell into an exception of the

---

[1] Although the government never formally denied DaVinci's administrative claim for damages, it does not dispute that DaVinci pursued and exhausted its administrative remedies.  After filing a Standard Form 95 with the Claims Division of the Office of Staff Judge Advocate, Department of the Army, DaVinci waited over six months without receiving a response before filing his complaint. *See* 28 U.S.C. § 2675(a) ("failure of an agency to make final disposition of a claim within six months after it is filed" is "deemed a final denial of the claim for purposes of [the FTCA]").

FTCA's waiver of its sovereign immunity.  In support of its assertion, the government submitted a declaration from Martin D. Hemmingsen, Program Element Monitor for Air Force Special Programs, attesting that in July 2014, the Antennas were classified as "SECRET" and "SECRET/SPECIAL ACCESS REQUIRED" level in accordance with Executive Order 13,526.[2]  The court concluded that it lacked jurisdiction over DaVinci's tort claims against the United States and that DaVinci failed to state a *Bivens* claim against the individual defendants, and dismissed all claims without prejudice.

DaVinci filed a First Amended Complaint against the United States, Christmas, Lewis, Russell, and 10 unnamed defendants.  This time, all of the individual defendants were sued in their individual capacities.  DaVinci asserted six causes of action against all defendants: (1) conversion, (2) seizure of property in violation of the Fourth Amendment, (3) deprivation of property without due process in violation of the Fifth Amendment, (4) conspiracy related to abuse of process,[3] (5) fraud, and (6) negligent misrepresentation.  The

---

[2] The Executive Order "prescribes a uniform system for classifying, safeguarding, and declassifying national security information."  Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).  "Information shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security" and it pertains to an enumerated category of information related to military and foreign intelligence matters.  *Id.* at § 1.4.

[3] DaVinci initially labeled this claim as a conspiracy related to abuse of process claim, but the district court treated this as an abuse of process claim, and we do so as well.

United States responded with another motion to dismiss under Rules 12(b)(1) and 12(b)(6).

The district court again granted the motion to dismiss all claims against the United States. The district court concluded that it lacked jurisdiction over DaVinci's FTCA claims of fraud, negligent misrepresentation, and conspiracy to commit fraud or misrepresentation because 28 U.S.C. § 2680(h) provides an absolute bar to such claims.**[4]** The district court also held that it lacked jurisdiction over DaVinci's abuse of process and conversion claims because of the FTCA's "detention of goods" exception under 28 U.S.C. § 2680(c). Relying on the 2014 Christmas letter and 2016 Hemmingsen declaration, the district court noted that it could not review the Air Force's decision to classify the Antennas as relating to the national defense because such classification was a discretionary decision, triggering the "discretionary function" bar under 28 U.S.C. § 2680(a). Lastly, the district court held that *Bivens* did not provide a cause of action against the United States, and therefore dismissed DaVinci's two constitutional claims against the United States.

---

**[4]** Section 2680(h) provides that plaintiffs may not assert any claim "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" by federal employees. DaVinci has not appealed the district court's order dismissing its claims of fraud, negligent misrepresentation, or conspiracy to commit fraud or misrepresentation. Section 2680(h) does *not* bar DaVinci's abuse of process claim because the provision contains an exception for certain claims arising out of the actions of an "investigative or law enforcement officer," which includes the U.S. Air Force agents in this case. 28 U.S.C. § 2680(h).

DaVinci timely appealed. The only parties on appeal are DaVinci and the United States because after the district court dismissed all claims against the United States, DaVinci dismissed the action without prejudice against Christmas, Russell and Lewis.

## II.

We review de novo a district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction. *Snyder*, 859 F.3d at 1156. When reviewing a dismissal pursuant to Rule 12(b)(1) and 12(b)(6), "we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party." *Id*. at 1156–57 (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). "Dismissal is improper unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989) (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that plaintiff must plead factual allegations that "plausibly give rise to an entitlement to relief").

## III.

DaVinci argues that the district court erred by dismissing four of its claims: abuse of process, conversion, and two *Bivens* claims. Although the government also moved to dismiss based on failure to state a claim, our focus is on the district court's determination that it lacked subject matter jurisdiction over DaVinci's claims. We briefly review the relevant aspects of the FTCA and then address each of DaVinci's claims in turn.

## A. The FTCA and Its Exceptions

Enacted in 1946, the FTCA provides that the United States shall be liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . ."). In doing so, the FTCA waives the United States' sovereign immunity for tort claims against the federal government in cases where a private individual would have been liable under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

That waiver, however, is limited to only "permit[] certain types of actions against the United States." *Morris v. United States*, 521 F.2d 872, 874 (9th Cir. 1975). Specifically, 28 U.S.C. § 2680 "provides for several exceptions that 'severely limit[]' the FTCA's waiver of sovereign immunity." *Snyder*, 859 F.3d at 1157 (quoting *Morris*, 521 F.2d at 874). If a plaintiff's tort claim falls within one of the exceptions, the district court lacks subject matter jurisdiction. *Id.* To determine whether section 2680 bars a proposed claim, we "look[] beyond the labels," *Thomas-Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir. 1988), and evaluate the alleged "conduct on which the claim is based," *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990). For instance, in *Thomas-Lazear*, we noted that "the claim for negligent infliction of emotional distress is nothing more than a restatement of the [originally barred] slander claim" because "the Government's actions that constitute a

claim for slander are essential to [the plaintiff]'s claim for negligent infliction of emotional distress." 851 F.2d at 1207. Hence, it was also barred by section 2680(h) as "[t]here is no other government conduct upon which [the claim] can rest." *Id*. (quoting *Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir. 1986)); *see also Alexander v. United States*, 787 F.2d 1349, 1350–51 (9th Cir. 1986) (holding that negligence claim was actually one of misrepresentation); *Leaf v. United States*, 661 F.2d 740, 742 (9th Cir. 1981) (same). Thus, if the governmental conduct underlying a claim falls within an exception outlined in section 2680, the claim is barred, no matter how the tort is characterized. *See Mt. Homes*, 912 F.2d at 356.

## B.

In support of its abuse of process and conversion claims, DaVinci alleged that the United States and its agents conspired to fraudulently and wrongfully coerce DaVinci to surrender the Antennas to the Air Force without due process or just compensation. DaVinci challenges, in essence, the government's conduct as it relates to the seizure of the Antennas.

### i. Abuse of Process Claim

To support a cause of action for abuse of process, DaVinci "must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner." *Snyder*, 859 F.3d at 1161 (quoting *Coleman v. Gulf Ins. Grp.*, 718 P.2d 77, 81 (Cal. 1986)). Because DaVinci's claim is premised on the seizure of the Antennas, we must first decide whether 28 U.S.C. § 2680(c)'s detention of goods exception precludes jurisdiction. *Compare Kosak v. United States*, 465 U.S. 848, 859–61

(1984) (holding that plaintiff's negligence claim fell under the detention of goods exception because he was challenging the Customs officials' negligence in the handling of his seized artwork), *with Cervantes v. United States*, 330 F.3d 1186, 1189–90 (9th Cir. 2003) (holding that plaintiff's negligence claim did not fall under the detention of goods exception because the alleged negligence had nothing to do with the detention of the car at issue).    We hold that DaVinci's abuse of process claim is barred by section 2680(c).**[5]**

The FTCA bars "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer."  28 U.S.C. § 2680(c).  The Supreme Court has interpreted the statutory language of section 2680(c) to encompass "*all* injuries associated in any way with the 'detention' of goods," including claims for negligence. *Kosak*, 465 U.S. at 854 (emphasis added).  More recently, the Supreme Court resolved a circuit split in holding that the detention of goods exception applies to the detention of goods by "*all* law enforcement officers," not just officers enforcing customs or excise laws. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 215–16 (2008) (emphasis added).  Even prior to *Ali*, we had held that section 2680(c)'s detention of goods exception extends beyond customs enforcement to cover Bureau of Prisons officers.    *See*

---

**[5]** The district court also noted that it could not consider a challenge to the Antennas' classification due to the discretionary function exception under 28 U.S.C. § 2680(a).  Because the detention of goods exception precludes DaVinci's claim, we do not address the applicability of the discretionary function exception. *United States v. Lockheed L-188 Aircraft*, 656 F.2d 390, 397 (9th Cir. 1979).

*Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 807 (9th Cir. 2003).

DaVinci attempts to distinguish its situation by emphasizing that the Antennas were *permanently* taken and without any allegation of criminal conduct, unlike those in *Kosak* or *Foster v. United States*, 522 F.3d 1071 (9th Cir. 2008), where the property was temporarily detained pending a criminal investigation. We recognize that other courts have confined section 2680(c) to bar only those suits arising out of the temporary custody or withholding of goods.[6] Our court has concluded otherwise. In our view, the statute has "effectively bar[red] any remedy for intentional torts with respect to seizures," notably treating "seizures" as covered by the detention exception in section 2680(c). *Gasho v. United States*, 39 F.3d 1420, 1433 (9th Cir. 1994).

As the case law stands, we have not made any distinction between a permanent or temporary detention. *See id.*; *see also Ali*, 552 U.S. at 216 (affirming that the detention of goods exception barred petitioner's claim against prison officials for losing some of his possessions during a transfer); *United States v. $149,345 U.S. Currency*, 747 F.2d 1278, 1283 (9th Cir. 1984) (holding that section 2680(c) precludes FTCA counterclaim based on permanent seizure of money as drug sales proceeds). The exception also applies whether or not the property was seized as part of a criminal investigation. *See, e.g.*, *Ali*, 552 U.S. at 216

---

[6] *See Kurinsky v. United States*, 33 F.3d 594, 597 (6th Cir. 1994), *overruled on other grounds by Ali*, 522 U.S. 214; *Chapa v. U.S. Dep't of Justice*, 339 F.3d 388, 390–91 (5th Cir. 2003); *Hallock v. United States*, 253 F. Supp. 2d 361, 366 (N.D.N.Y. 2003); *but see Parrott v. United States*, 536 F.3d 629 (7th Cir. 2008) (noting "some circuits have held that officers' actions of 'seizing' property falls within the scope of the exception").

(holding exception applied where goods were damaged during prison transfer); *Bramwell*, 348 F.3d at 805–06 (applying section 2680(c) to bar petitioner's claim for damages where his eyeglasses were accidentally damaged while being washed in the prison laundry). Our reading of section 2680(c) "effectively bars any remedy for intentional torts with respect to seizures" by law enforcement officials.[7] *Gasho*, 39 F.3d at 1433.

Perhaps acknowledging the breadth of the exception, Congress added paragraphs (1)-(4) to section 2680(c) through the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, § 3, 114 Stat. 202, 211, which created an

---

[7] Admittedly, our broad reading in *Gasho* conflicts with our repeated warnings against reading exemptions so broadly that the "FTCA's waiver of sovereign immunity" ends up being "wholly subsumed in the [] exception." *Snyder*, 859 F.3d at 1159 (holding that section 2680(c)'s exception for tax-related activities is "broad, but it is not unlimited"); *see also Wright v. United States*, 719 F.2d 1032, 1036 (9th Cir. 1983) (noting the court "reads no exemptions into the FTCA beyond those provided"). In *Kosak*, the Supreme Court emphasized "that the exceptions to the Tort Claims Act should not be read in a way that would 'nullif[y them] through judicial interpretation,'" because "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute. 465 U.S. at 853 n.9 (quoting *United States v. Yellow Cab Co.*, 340 U.S. 543, 548 n.5 (1983)).

During oral argument, DaVinci's counsel asserted, for the first time, that the government no longer has custody of the Antennas because they were used during an attack in Syria and, hence, the detention of goods exception does not apply. Oral argument at 29:37-30:30, *DaVinci Aircraft, Inc. v. United States*, No. 17-55719 (9th Cir. Nov. 13, 2018), https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000014566. DaVinci did not mention the lack of custody in its briefing and has conceded that it cannot point to any evidence in the record to support the contention. *Id.* We therefore do not address the applicability of section 2680(c) to such hypothetical circumstances and leave that issue for another day.

exception to the detention of goods exception for property "seized for the purpose of forfeiture." 28 U.S.C. § 2680(c)(1). The district court correctly held that the seizure of the Antennas does not fall within the forfeiture exception because there is no evidence that the government seized them "solely for the purpose of forfeiture." *Foster*, 522 F.3d at 1075. In fact, no forfeiture proceedings have been initiated against DaVinci. Because the Antennas were not seized "solely" for the purpose of forfeiture, section 2680(c)(1)–(4) does not rewaive sovereign immunity to allow DaVinci's abuse of process claim.

### ii. Conversion Claim

The same logic extends to prohibit DaVinci's conversion claim because it is based on the allegedly illegal seizure of goods. *See Gasho*, 39 F.3d at 1433 (holding that section 2680(c) barred tort claim based on seizure and detention of plaintiffs' aircraft); *Lockheed L-188 Aircraft*, 656 F.2d at 397 (same).

DaVinci relies on a line of our cases to argue that the district court had jurisdiction to hear his conversion claim because it "sounds in tort" and could not be heard in the Court of Federal Claims. These cases did recognize that where a contract between the plaintiff and federal government was not the sole basis for liability and a claim was "essentially one sounding in tort," the district court had jurisdiction to hear the plaintiff's FTCA claim. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 550 (9th Cir. 1984) (quoting *Woodbury v. United States*, 313 F.2d 291, 294–96 (9th Cir. 1963)); *see also Love*, 915 F.2d at 1246–47 (holding that district court has jurisdiction under the FTCA to consider conversion claim under Montana law). DaVinci's reliance on these cases is misplaced, however, because they predate the expansion of

the detention of goods exception by the Supreme Court to "sweep within the exception all injuries associated in any way with the 'detention' of goods," *Kosak*, 465 U.S. at 854, by "all law enforcement officials," *Ali*, 552 U.S. at 216. Section 2680(c)'s very limited exception within the exception for goods seized "solely" for forfeiture purposes, *Foster*, 522 F.3d at 1079, also does not apply here.

DaVinci correctly asserts that the Court of Federal Claims would have no jurisdiction over its conversion claim because it is a pure tort claim. *See Snyder*, 859 F.3d at 1156 n.2; *see also Hall v. United States*, 19 Cl. Ct. 558, 559 (1990) (noting that "the parties agreed that plaintiffs would not pursue their conversion claim as [the Court of Federal Claims] does not have jurisdiction over claims sounding in tort."), *aff'd*, 918 F.2d 187 (Fed. Cir. 1990). As discussed below, however, this does not mean that DaVinci is foreclosed from all relief.

### C. The Tucker Act and Court of Federal Claims[8]

As the Supreme Court discussed in *Kosak*, one rationale for an expansive interpretation of the FTCA exceptions is that Congress did not intend the FTCA to provide recovery where "adequate remedies were already available." 465 U.S. at 858. The Tucker Act has long provided a venue for claims like the one DaVinci brings here. *See* 28 U.S.C. § 1491(a)(1) (providing for jurisdiction in the Court of Federal Claims for "any claim against the United States founded either upon the Constitution, or any Act of Congress

---

[8] Prior to 1992, the U.S. Court of Federal Claims was known as the U.S. Court of Claims or Claims Court. *See* Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 902(a)(1), 106 Stat. 4506, 4517.

or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not* sounding in tort." (emphasis added)).  In fact, the district court noted that claims like DaVinci's—claims against the United States for compensation or the return of materials seized pursuant to 18 U.S.C. § 793(d)—have been brought in the Court of Federal Claims as breaches of implied or express contracts. Critically, the Supreme Court has explicitly held that the detention of goods exception from 28 U.S.C. § 2680(c) does not apply to the Tucker Act.  *See Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 466 (1980).

The Court of Federal Claims' opinion in *Ast/Servo Systems, Inc. v. United States* contained strikingly similar facts to DaVinci's situation.  449 F.2d, 789, 789 (Ct. Cl. 1971).  In *Ast/Servo Systems, Inc.*, the Air Force mistakenly sold through a public sale surplus governmental material, specifically guidance sets, which the plaintiff bought from the original purchasers for $65-300 apiece and then offered for sale at a 10-50 times markup.  *Id*. at 789.  The Air Force subsequently informed the plaintiff that the guidance sets "relat[ed] to the national defense" under the Espionage Act, and demanded immediate return of the equipment.  *Id*. at 789–90.  The plaintiff complied and then brought suit for "just compensation" in the amount of the sales price it had marked up.  *Id*. at 790.  Applying principles of contract law, the court held that the plaintiff could not recover "just compensation" because the original Air Force sale was a mistake, thereby voiding the original contract, *id*. at 791–92, but that the plaintiff could seek actual out-of-pocket costs, *id*. at 792.  *See also Int'l. Air Response v. United States*, 75 Fed. Cl. 604, 614 (2007) ("[E]ven if the Espionage Act did apply, plaintiff would be entitled to compensation for its 'actual expenditures.'" (quoting *Ast/Servo Systems, Inc.*,

449 F.2d at 790)).   Thus, at the very least, DaVinci could seek reimbursement for the price it paid for the Antennas at the Court of Federal Claims.**[9]**

DaVinci could proceed in the Court of Federal Claims under the Tucker Act through a takings claim under the Fifth Amendment.  *See, e.g.*, *Lockheed L-188 Aircraft*, 656 F.2d at 395–97 (dismissing plaintiffs' counterclaim under the Tucker Act because it exceeded the $10,000 jurisdictional limit, but noting that they could pursue an independent action to recover compensation for their seized aircraft in the Court of Federal Claims); *see also Hall*, 19 Cl. Ct. at 559 ("[P]laintiffs seek entitlement to the sum of $175,000.00 as just compensation under the fifth amendment on account of the government's alleged taking of the [F-100 jet engine unified fuel control]."); *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1172 (9th Cir. 2007) ("Assuming, without deciding, that [plaintiffs] had a cognizable property interest, its remedy for an alleged takings claim is under the Tucker Act, 28 U.S.C. § 1491.").

---

**[9]** If DaVinci wishes to contest the Antennas' classification, it may still do so in the Court of Federal Claims.  *See, e.g.*, *Int'l Air Response*, 75 Fed. Cl. at 614 (noting that not all information about wartime activities necessarily relates to national defense, and holding that the government failed to show that the Espionage Act should be applied to the historical military transport airplanes that were confiscated); *Dubin v. United States* (*Dubin I*), 289 F.2d 651, 655 (Ct. Cl. 1961) (holding that "[i]f there is a genuine controversy as to whether the articles here in question related to the national defense, . . . the case will have to go to trial"); *Dubin v. United States* (*Dubin II*), 363 F.2d 938, 942 (Ct. Cl. 1966) (holding, based on findings from trial, that there was "no room for doubt that [the repossessed equipment] was related to the national defense").

## D. *Bivens* Claims

A *Bivens* suit may be brought against a government official in her individual capacity, but not in her official capacity because such a suit "would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id*. at 1173. "Sovereign immunity is jurisdictional in nature," so there is no subject matter jurisdiction unless sovereign immunity has been waived. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

DaVinci sued Christmas, Lewis, Russell and 10 unnamed defendants in their individual capacities. On appeal, DaVinci argues that the district court erred in dismissing its *Bivens* claims because the named individual officers were included in the government's motion to dismiss. This argument, however, is belied by the record. The government's motion to dismiss was filed on behalf of only the United States.[10] More importantly, DaVinci concedes that it dismissed the case without prejudice against Christmas, Russell and Lewis due to the "practical impossibility of personal service." DaVinci also asserts that four other individuals,[11] originally identified as John Does,

---

[10] Notably, the United States substituted as a defendant in the district court in the place of Lewis, Russell and Christmas with respect to the common law tort causes of action because they were deemed to be acting within the course and scope of their employment with the United States. *See* 28 U.S.C. § 2679(d)(1). The United States did *not*, however, file substitutions for any of the named individual defendants as to DaVinci's *Bivens* claims.

[11] The four other individual agents were Special Agent in Charge Laura Voyatzis, Special Agents Lenora Madison, John Drapalik, and David Giverno.

remain parties to the case on appeal, but DaVinci never attempted to amend its complaint to include those individuals nor did DaVinci actually serve them with a summons and complaint.

In order for the district court to exercise personal jurisdiction over a defendant sued in her individual capacity, the defendant must be "properly served" in her individual capacity. *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987). "We require 'substantial compliance with [Federal Rule of Civil Procedure] 4.'" *Id*. (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). Because DaVinci voluntarily dismissed the case against the three named individuals and never amended the complaint to include any others, DaVinci's *Bivens* claims against the individual defendants are not part of this appeal and do not exist. The only defendant remaining is the United States, and the district court properly dismissed the *Bivens* claims against the United States for lack of subject matter jurisdiction. *See Meyer*, 510 U.S. at 475, 486; *Daly-Murphy*, 837 F.2d at 356.

## IV.

The saga over the seizure of DaVinci's Antennas illustrates a tension arising out of our FTCA cases. On the one hand, we are instructed to construe statutes waiving the government's sovereign immunity strictly in favor of the sovereign. Yet we must also be wary of reading exemptions so broadly that the FTCA exceptions swallow up the statute and leave no recourse for plaintiffs like DaVinci. Notwithstanding where the Antennas are today, DaVinci may have a remedy, even if limited, in the Court of Federal Claims.

Therefore, we affirm the judgment of the district court and remand this case with instructions that, if DaVinci so requests, the court shall transfer this action to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.

**AFFIRMED      AND      REMANDED      WITH INSTRUCTIONS.**