**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUIS PINO, on behalf of himself and all others similarly situated, | No. 21-55564 |
| *Plaintiff-Appellant,* | D.C. No. 2:20-cv-08499-JFW-KS |
| v. | |
| CARDONE CAPITAL, LLC; GRANT CARDONE; CARDONE EQUITY FUND V, LLC; CARDONE EQUITY FUND VI, LLC, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted March 17, 2022
San Francisco, California

Filed December 21, 2022

Before:  Morgan Christen and Daniel A. Bress, Circuit
Judges, and Barbara M. G. Lynn,[*] District Judge.

Opinion by Judge Lynn

## SUMMARY[**]

### Securities Act of 1933

The panel affirmed in part and reversed in part the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of Luis Pino's suit against Grant Cardone, Cardone Capital, LLC, Cordone Equity Fund V, LLC, and Cardone Equity Fund VI, LLC, alleging violations of the Securities Act of 1933 based on material misstatements or omissions in certain real estate investment offering materials.

Pino brought claims under § 12(a)(2) of the Securities Act against all Defendants, and a claim pursuant to § 15 of the Securities Act against Cardone and Cardone Capital.  At issue was whether Cardone and Cardone Capital count as persons who "offer[] or sell[]" securities under § 12(a) based on their social media communications to prospective investors.  The district court concluded that Cardone and Cardone Capital did not qualify as statutory sellers.

---

[*] The Honorable Barbara M. G. Lynn, United States District Judge for the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel concluded that § 12 contains no requirement that a solicitation be directed or targeted to a particular plaintiff, and accordingly, held that a person can solicit a purchase, within the meaning of the Securities Act, by promoting the sale of a security in mass communication. Because the First Amended Complaint sufficiently alleges that Cardone and Cardone Capital were engaged in solicitation of investments in Funds V and VI, the district court erred in dismissing Pino's claim against Cardone and Cardone Capital under § 12(a)(2), and also erred in dismissing his § 15 claim for lack of a primary violation of the Securities Act.

In a separate memorandum disposition, the panel concluded that some of the Defendants' challenged statements are actionable under the Securities Act.

## COUNSEL

Raj Mathur (argued), Susman Godfrey LLP, New York, New York; Marc M. Seltzer, Steven G. Sklaver, and Krysta K. Pachman, Susman Godfrey LLP, Los Angeles, California; for Plaintiff-Appellant.

Anne M. Voigts (argued), King & Spalding LLP, Palo Alto, California; David P. Mattern, King & Spalding LLP, Washington, D.C.; Joseph N. Akrotirianakis, King & Spalding LLP, Los Angeles, California; Lisa R. Bugni, King & Spalding LLP, San Francisco, California; for Defendants-Appellees.

**OPINION**

LYNN, District Judge:

Plaintiff Luis Pino filed suit against Defendants Grant Cardone, Cardone Capital, LLC, Cardone Equity Fund V, LLC, and Cardone Equity Fund VI, LLC, alleging violations of the Securities Act of 1933 ("Securities Act") based on material misstatements or omissions in certain real estate investment offering materials. Specifically, Pino brought claims under § 12(a)(2) of the Securities Act against all Defendants, and a claim pursuant to § 15 of the Securities Act against Cardone and Cardone Capital, LLC. The district court dismissed all claims under Federal Rule of Civil Procedure 12(b)(6).

Pino appeals, arguing that the district court erred in holding that Cardone and Cardone Capital, LLC are not "sellers" under § 12(a)(2). In this opinion, we hold that Pino plausibly stated a claim that Cardone and Cardone Capital, LLC qualify as statutory sellers under the Securities Act. In a separate memorandum disposition filed concurrently with this opinion, we conclude that some of the Defendants' challenged statements are actionable under the Act. We therefore affirm in part and reverse in part the district court's dismissal of Pino's claims.

## Background

Cardone founded Cardone Capital, LLC ("Cardone Capital") in 2017, and is its CEO and sole Manager. Cardone Capital is a real estate property management company that invests in property by pooling money from many other investors. ER 6–7. Cardone Capital manages

Cardone Equity Fund V, LLC ("Fund V") and Cardone Equity Fund VI, LLC ("Fund VI"), which invest in real estate assets throughout the United States. Funds V and VI (the "Funds") are categorized as emerging growth companies under the 2015 U.S. JOBS Act, a law that reduces reporting and accounting requirements for emerging companies, and that enables the sale of securities using crowdfunding techniques. *See* Jumpstart Our Business Startups Act, Pub. L. No. 112-106, 126 Stat. 306 (Apr. 5, 2012). Investments in Funds V and VI were subject to Regulation A, which exempts offerings from registration with the Securities and Exchange Commission ("SEC"), but are subject to certain requirements, including submission to the SEC of an "offering statement" disclosing information about the proposed offering on Form 1-A, which is subject to qualification by the SEC before the offering can proceed. 17 C.F.R. §§ 230.252, 230.255. Regulation A provides that the SEC "does not pass upon the merits of or give its approval to any securities offered or the terms of the offering, nor does it pass upon the accuracy or completeness of any offering circular or other solicitation materials." *Id.* § 230.253.

Fund V began receiving subscriptions on December 12, 2018, and raised $50,000,000 as of September 20, 2019. The First Amended Complaint alleges that when Fund V closed, Cardone posted on the Cardone Capital Instagram account that Fund V is "the first Regulation A of its kind to raise $50 Million in crowdfunding using social media," and that "[b]y accessing social media, I am offering investment opportunities to the everyday investor, like you!" Appellant's Excerpts of the Record ("ER") ER-56 ("FAC") ¶ 38; *see also id.* ¶ 40 ("This is the largest Reg A+ crowdfunding ever done for real estate investments of

this quality using social media. . . .   By using no middleman & going directly to the public using social media we reduce our cost. This ensures more of your money goes directly into the assets, resulting in lower promotional cost. More importantly, investors gain access to real estate that has never been available before.").  Fund VI began receiving subscriptions on October 16, 2019, and raised $50,000,000 as of June 25, 2020.

Plaintiff Luis Pino alleges he invested a total of $10,000 in Funds V and VI.  Pino further alleges that he invested in Fund V two days after attending a marketing presentation hosted by Cardone in Anaheim, California, titled the "Breakthrough Wealth Summit."  *Id.* ¶¶ 34–36.

In 2020, Pino filed this putative class action, asserting claims under § 12(a)(2) of the Securities Act against all Defendants, and a claim pursuant to § 15 of the Securities Act against Cardone and Cardone Capital.  In the FAC, Pino alleges that in soliciting investments in Funds V and VI, Defendants made untrue statements of material fact or concealed or failed to disclose material facts in Instagram posts and a YouTube video posted between February 5, 2019, and December 24, 2019.

For example, the FAC describes an April 22, 2019, YouTube video in which Cardone states, "it doesn't matter whether [the investor] [is] accredited [or] non-accredited . . . you're gonna walk away with a 15% annualized return. If I'm in that deal for 10 years, you're gonna earn 150%. You can tell the SEC that's what I said it would be.  They call me Uncle G and some people call me Nostradamus, because I'm predicting the future, dude; this is what's gonna happen."  *Id.* ¶¶ 1, 56.  The FAC also quotes several Instagram posts, made on both Cardone's personal account

and the Cardone Capital account, regarding certain internal rates of return ("IRR"), monthly distributions, and long-term appreciation.  For example, the FAC describes a February 5, 2019, post in which Cardone asks potential investors on his personal Instagram account, "Want to double your money[?]" and states that an investor could receive $480,000 in cash flow after investing $1,000,000, achieve "north of 15% returns after fees," and obtain a "118% return amounting to 19.6% per year."  *Id.* ¶ 67.

Pino alleges that these statements were materially misleading.   Further, he alleges that none of the communications contained cautionary language either indicating that the promises were speculative, or identifying the risk associated with investing in Funds V and V, but instead contained only a generic legend required under SEC Rule 255.  *E.g.*, *id.* ¶ 62.

Defendants moved to dismiss the FAC for failure to state a claim under Rule 12(b)(6).  The district court granted the motion, concluding in part that Cardone and Cardone Capital did not qualify as statutory sellers, warranting dismissal of the § 12(a)(2) and § 15 claims against them.  Pino appeals. We have jurisdiction under 28 U.S.C. § 1291.

**Standard of Review**

We review de novo a district court's dismissal on the pleadings.  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021).   Dismissal under Rule 12(b)(6) is warranted when the complaint fails to state sufficient facts to establish a plausible claim to relief.  *Id.*  When reviewing a dismissal pursuant to Rule 12(b)(6), the Court accepts "as true all facts alleged in the complaint" and construes them "in the light most favorable to plaintiff."  *DaVinci Aircraft, Inc. v. United*

*States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (internal quotations omitted).  However, "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### Discussion

Section 12(a)(2) of the Securities Act of 1933 imposes liability on "any person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact . . . to the person purchasing such security from him."  15 U.S.C. § 77l(a)(2).  The only issue we decide here is whether Cardone and Cardone Capital count as persons who "offer[] or sell[]" securities under § 12(a) based on their social media communications to prospective investors.

The term "offer to sell" or "offer" means a "solicitation of an offer to buy . . . for value."  *Id.* § 77b(b)(3).  To state a claim under § 12(a)(2), a plaintiff must allege that: (1) the defendant qualifies as a statutory seller or offeror; (2) the sale was effected "by means of a prospectus or oral communication"; and (3) the communication contains an "'untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading.'"  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1028–29 (9th Cir. 2005) (quoting 15 U.S.C. § 77l(a)(2)). Section 15 of the Act imposes secondary liability on anyone who "controls" an entity that violates § 12.  15 U.S.C. § 77o(a).  To state a claim under § 15, a plaintiff must show that: (1) there is a primary violation of the Securities Act; and (2) the defendant directly or indirectly controlled the person or entity liable for the primary violation. *See SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).

The district court held that neither Cardone nor Cardone Capital qualified as a statutory seller under § 12(a)(2). Specifically, the district court noted that the alleged solicitation consisted solely of statements made on social media highlighting the benefits of investing in the Funds. ER-24. Because neither Cardone nor Cardone Capital directly and actively solicited Pino's investment, and Pino did not allege that he relied on any such solicitation when investing, the district court held neither could be held liable as a "seller" under § 12(a)(2). The district court further held that, in the absence of a primary § 12 violation of the Securities Act, Pino's control claims against Cardone and Cardone Capital under § 15 must be dismissed. On appeal, Pino contends this was error, mandating reversal.

In *Pinter v. Dahl*, 486 U.S. 622, 643, 647–48 (1988), the Supreme Court held that a person may be liable as a "seller" under the predecessor version of § 12(a) if the person either: (1) passes title to the securities to the plaintiff; or (2) "engages in solicitation," *i.e.*, "solicits the purchase [of the securities], motivated at least in part by a desire to serve his own financial interests or those of the securities owner." The FAC does not allege that Cardone or Cardone Capital passed title to the securities in question, and accordingly, neither qualify as a "seller" under the first prong of *Pinter*.

As to the second prong, there is no question that Cardone and Cardone Capital had financial interests tied to the Funds. Cardone Capital received 35% of the Funds' profits, ER 143, 141, 260, 268, and Cardone personally controlled Cardone Capital. ER 148, 265. The question, then, is whether Cardone and Cardone Capital "engaged in solicitation."

Neither the Supreme Court nor this Court has opined on whether solicitation must be direct or targeted towards a

particular purchaser to fall within § 12. Accordingly, we must decide whether the Securities Act requires that a seller must specifically target an individual purchaser's investment, or whether Defendants' indirect, mass communications to potential investors through social media posts and online videos counts as "engaging in solicitation" under *Pinter*, such that Cardone and Cardone Capital qualify as statutory sellers.

The Eleventh Circuit recently held that videos posted publicly on YouTube and similar websites can constitute solicitation under § 12, even if the offering's promoters did not directly target the particular purchasers. *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022). Specifically, in *Wildes*, the Eleventh Circuit considered "whether a person can solicit a purchase, within the meaning of the Securities Act, by promoting a security in a mass communication." *Id.* at 1345. The Eleventh Circuit concluded that, to qualify as solicitation under § 12, a person must "urge or persuade" another to buy a particular security, but those efforts at persuasion need not be personal or individualized. *Id.* at 1346 (quoting *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.3d. 1521, 1531, 1534 (11th Cir. 1991)). In reaching its holding, the Eleventh Circuit observed that the Securities Act does not distinguish between individually targeted sales efforts and broadly disseminated pitches, and noted that in early cases applying the Securities Act of 1933, "people understood solicitation to include communications made through diffuse, publicly available means—at the time, newspaper and radio advertisements." *Id.* at 1346.

The Eleventh Circuit correctly recognized that nothing in § 12 expressly requires that solicitation must be direct or personal to a particular purchaser to trigger liability under

the statute.  *See id.* at 1345–46.  Put differently, nothing in the Act indicates that mass communications, directed to multiple potential purchasers at once, fall outside the Act's protections.

On the contrary, the Act contains broad language authorizing the purchaser of a security to bring suit against "*[a]ny* person . . . who offers or sells a security . . . by means of a prospectus or oral communication" that misleads or omits material facts.    15  U.S.C.  § 77*l*(a)(2)  (emphasis added).  The statute defines "offer to sell," "offer for sale," and "offer" as including "*every* attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value."  *Id.* § 77b(a)(3)  (emphasis added). "Prospectus" means "*any* prospectus, notice, circular, advertisement, letter, or communication, *written or by radio or television*, which offers any security for sale or confirms the sale of any security."  *Id.* § 77b(a)(10) (emphasis added). Although the Securities Act of 1933 predates the Internet, the inclusion of radio and television communications indicates Congress contemplated that broadly disseminated, mass communications with potentially large audiences would fall within the Act's scope.  *See Wildes*, 25 F.4th at 1346.

Nor has the Supreme Court imposed a requirement that solicitation under § 12 requires that a seller "actively and directly" solicit a plaintiff's investment, as Defendants contend.  In *Pinter*, the leading case on the meaning of a "statutory seller" under § 12, the Supreme Court recognized that imposing liability beyond those who merely pass title to securities, *i.e.*, to brokers and others who solicit offers to purchase securities, "furthers the purposes of the Securities Act—to promote full and fair disclosure of information to the public in the sales of securities."  486 U.S. at 646.  In that

vein, the Court held in *Pinter* that the Act's "seller" requirement extends liability "to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Id.* at 647; *see In re Daou*, 411 F.3d at 1029 ("[A] plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain . . . .").

Creating liability for those who solicit a sale for financial gain, as opposed to limiting it to those who simply pass title, is consistent with the Securities Act's remedial goal of protecting purchasers from the harm caused by promoters' material misstatements and omissions, in part due to the promoter's superior access to information concerning the securities and their valuation. As the Court explained in *Pinter*:

> In order to effectuate Congress' intent that § 12(1) civil liability be *in terrorem*, the risk of its invocation should be felt by solicitors of purchases. The solicitation of a buyer is perhaps the most critical stage of the selling transaction. It is the first stage of a traditional securities sale to involve the buyer, and it is directed at producing the sale. In addition, brokers and other solicitors are well positioned to control the flow of information to a potential purchaser, and, in fact, such persons are the participants in the selling transaction who most often disseminate material information to investors. Thus, solicitation is the stage at which an investor is most likely to be injured, that is, by being

persuaded to purchase securities without full and fair information. Given Congress' overriding goal of preventing this injury, we may infer that Congress intended solicitation to fall under the mantle of § 12(1).

486 U.S. at 646–47 (citations omitted).

Beyond the requirement that a seller must have his own, independent financial interest in the sale, *Pinter* contains no indication that Congress was concerned with regulating only a certain type of solicitations, let alone specifically targeted "active and direct solicitations," as urged by Defendants. Defendants contend that a plaintiff must allege a relationship "not unlike contractual privity" between purchaser and seller, which cannot be created by a broadly distributed communication. For support, Defendants argue that the language of § 12 cabins a "seller" to a person who makes an "offer" to the person "purchasing such security from him," pointing to a statement in *Pinter* that "the language of § 12(1) contemplates a buyer-seller relationship not unlike traditional contractual privity." 486 U.S. at 641–42.

We disagree. the "contractual privity" language in *Pinter* comes from the Court's recognition that, in considering who may be regarded as a statutory seller, "the language of § 12(1) contemplates a buyer-seller relationship." *Id*. at 642. However, as discussed above, the Supreme Court interpreted the meaning of "seller" under § 12 to include more than mere owners to encompass those who engage in solicitation. But *Pinter* did not answer what types of communications qualify as solicitation. *See Wildes*, 25 F.4th at 1346 (explaining that *Pinter* "says nothing about what solicitation entails" and "instead focuses on the result and intent necessary for section 12 liability: the solicitation

must succeed, and it must be motivated by a desire to serve the solicitor's or the security owner's financial interests").

In fact, if anything, the advertisements at issue in this case—Instagram posts and YouTube videos—are the types of potentially injurious solicitations that are intended to command attention and persuade potential purchasers to invest in the Funds during the "most critical" first stage of a selling transaction, when the buyer becomes involved. *See Pinter*, 486 U.S. at 646–47. Pino fairly alleges that the nature of social media presents dangers that investors will be persuaded to purchase securities without full and fair information.

In this case, Defendants allegedly relied significantly on social media to source investors for the Funds at issue here. Cardone posted on social media that Fund V was funded through "crowdfunding using social media," and touted the use of social media as an intentional strategy to reduce promotional costs. FAC ¶¶ 38, 40. Accordingly, through their social media engagement, Cardone and Cardone Capital were significant participants in the selling transaction because they disseminated material information to would-be investors. To conclude that their social media communications fall outside the Act's protections would be at odds with Congress's remedial goals. As observed by the Eleventh Circuit in *Wildes*, under Defendants' interpretation of the Act, a seller liable "for recommending a security in a personal letter could not be held accountable for making the exact same pitch in an internet video." 25 F.4th at 1346.

For the foregoing reasons, we conclude that § 12 contains no requirement that a solicitation be directed or targeted to a particular plaintiff, and accordingly, join the Eleventh Circuit in holding that a person can solicit a

purchase, within the meaning of the Securities Act, by promoting the sale of a security in a mass communication. Here, the FAC sufficiently alleges that Cardone and Cardone Capital were engaged in solicitation of investments in Funds V and VI. The FAC contends that Cardone and Cardone Capital engaged in extensive solicitation efforts, including through the "Breakthrough Wealth Summit," a conference hosted by Cardone, and Defendants' extensive social media posts. Moreover, the FAC alleges that both Cardone and Cardone Capital had a financial interest in the sale of the securities; the Fund V and VI offering statements describe compensation tethered to contributed capital and distributions received by the Funds' manager, Cardone Capital, which is controlled by Cardone. FAC ¶ 84. To state a claim under § 12(a)(2), Pino need not have alleged that he specifically relied on any of the alleged misstatements identified in the FAC. *See Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 965 (9th Cir. 1990) ("[R]eliance is not an element of a section 12(2) claim."). Accordingly, Pino plausibly alleged that Cardone and Cardone Capital were both statutory sellers under § 12(a)(2). Because the district court erred in dismissing Pino's claim against Cardone and Cardone Capital under § 12(a)(2), it also erred in dismissing Pino's § 15 claim for lack of a predicate primary violation of the Securities Act.

For the foregoing reasons and those set forth in our accompanying memorandum disposition, the district court's dismissal of Pino's claims under § 12(a)(2) and § 15 is

**AFFIRMED IN PART, REVERSED IN PART.[1]**

---

[1] The parties shall bear their own costs on appeal.