Concurrence by Judge BYBEE
OPINION
CHRISTEN, Circuit Judge:
In 2010, the Internal Revenue Service set a trap to catch people filing for fraudulent tax refunds. The IRS enlisted the assistance of plaintiffs’ tax preparation and refund-advance businesses. It warned that refusal to cooperate would interfere with a federal criminal investigation, it used millions of plaintiffs’ dollars as bait, and it promised to reimburse them for any losses. Plaintiffs cooperated, but the IRS never returned their money. Instead, at the conclusion of the sting operation, the IRS *1155 subpoenaed more than 5,000 of plaintiffs’ documents to assist with its prosecution efforts and revoked one plaintiffs electronic tax filing privileges — at the beginning of the tax preparation season — forcing both plaintiffs into bankruptcy.
Plaintiffs sued the IRS under the Federal Tort Claims Act (FTCA), alleging several causes of action, but the district court granted the government’s motion to dismiss. The court ruled that the IRS is immune from liability for its conduct because 28 U.S.C. § 2680(c) bars claims against the government “arising in respect of the assessment or collection of any tax.” We disagree. Because § 2680(c) does not confer absolute immunity on the IRS, and because, construing the facts in the light most favorable to plaintiffs, the IRS’s sting operation did not “aris[e] in respect of the assessment or collection of any tax,” we reverse the district court’s judgment and remand for further proceedings.
I. BACKGROUND[1]
A. The Tax Fraud Sting
Total Tax Preparation, Inc. (TTP) was a tax return preparation business. Its affiliate, Snyder & Associates Acquisitions LLC (SAA) made loans to taxpayers who were awaiting income tax refunds. TTP prepared its clients’ federal income tax returns and referred clients who wanted refund advances to SAA. When SAA loaned money based on anticipated tax refunds, its clients instructed the IRS to send their refund checks to SAA. Kerry Snyder was TTP’s president and SAA’s managing member.
In 2010, Nancy Hilton, a tax preparer who worked as an independent contractor, referred several clients to SAA for refund anticipation loans. When one of her clients tried to cash a check issued by SAA, the bank notified Snyder that Hilton’s client was using fake identification. Snyder asked the bank to hold the check and immediately contacted Hilton. Hilton admitted to Snyder that she was working with IRS Criminal Investigations Special Agent Matt Daniels in an undercover sting operation, to catch people making fraudulent claims for tax refunds. Snyder realized that the IRS was unlikely to issue refunds for the fraudulent tax returns filed on behalf of Hilton’s clients, and that SAA’s ability to collect on its refund anticipation loans was in jeopardy. Snyder requested that the bank stop payment on all checks SAA had issued to Hilton’s clients.
According to the complaint, Agent Daniels contacted Snyder and informed him that stopping payment would interfere with a federal criminal investigation. Agent Daniels asked Snyder to allow the checks to clear the bank, and assured Snyder that SAA would be repaid. When Snyder called an IRS supervisor to confirm Agent Daniels’s representations, the supervisor vouched for the sting operation and for Agent Daniels. Snyder authorized SAA to issue new checks to Hilton’s clients, and Agent Daniels and another IRS agent made additional assurances that SAA “would be made whole.”
TTP and SAA quickly began to experience negative repercussions from their agreement to cooperate with the IRS. First, TTP’s and SAA’s bank informed them that it was closing their business accounts because of an inquiry the bank made to the IRS about the investigation of TTP’s and SAA’s clients. Plaintiffs allege *1156 that the IRS failed to inform the bank that TTP and SAA were aiding the sting operation at the IRS’s request. TTP and SAA incurred $12,777 in bank and attorneys’ fees to keep their bank accounts open. The IRS ignored TTP’s and SAA’s repeated requests for written confirmation of its promise to repay SAA, and also ignored their requests to reimburse the advanced funds and plaintiffs’ bank and attorneys’ fees.
Plaintiffs allege that the IRS responded to their requests by serving subpoenas for more than 5,000 pages of their tax return and loan records. TTP and SAA produced the subpoenaed documents at significant additional expense. The IRS later notified TTP that it was suspending TTP’s ability to file tax returns electronically through the IRS’s “e-filing” system, because fraudulent returns had been filed using TTP’s electronic filing identification number. The letter notifying TTP of the suspension directed all inquiries to Agent Daniels.
The suspension prevented TTP from filing tax returns electronically for clients, just as the 2011 tax preparation season began. Initially, the suspension put TTP at a significant competitive disadvantage. But on January 1, 2011, the IRS began requiring all paid tax preparers to file all returns electronically, and at that point, the suspension effectively put TTP out of business. TTP’s failure deprived SAA of its most significant source of referrals, and SAA soon failed as well. TTP successfully appealed the IRS’s suspension of its e-filing privileges, but the damage already, had been done.
The complaint alleges that the IRS never issued refunds for Hilton’s clients, never repaid the funds Snyder’s company advanced for refund anticipation loans, and never compensated TTP and SAA for any of their other losses.
B. District Court Proceedings
TTP and SAA submitted an administrative claim to the IRS for $2,608,078, and later filed suit in the United States District Court for the Central District of California. They concurrently filed an action in the Court of Federal Claims for an uncompensated taking and for breach of contract, pursuant to the Tucker Act, 28 U.S.C. § 1491.[2]
In this action, the IRS argued that the district court should dismiss TTP’s and SAA’s tort claims for four reasons: (1) the lawsuit is barred by 28 U.S.C. § 2680(c), the tax assessment and collection exception to the FTCA; (2) claims based on the IRS’s misrepresentations are barred by the provisions of 28 U.S.C. § 2680(h); (3) plaintiffs failed to state a claim for things wrongfully acquired, conversion, or abuse of process under California law; and (4) plaintiffs’ suit is barred by 28 U.S.C. § 2680(a), the discretionary function exception to the FTCA. The district court granted the government’s motion and dismissed plaintiffs’ claims pursuant to Federal Rule of Civil Procedure 12(b)(1). The court accepted the argument that 28 U.S.C. § 2680(c) shields the IRS from TTP’s and SAA’s claims. TTP and SAA timely appealed.
II. STANDARD OF REVIEW
We review de novo a district court’s decision to grant a motion to dismiss for lack of subject matter jurisdiction. Lacano Invs., LLC v. Balash, 765 F.3d 1068, 1071 (9th Cir. 2014). Because the government’s motion was filed pursuant to Federal *1157 Rules of Civil Procedure 12(b)(1) and 12(b)(6), we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiffs, the non-moving party. See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (“The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiffs allegations as true and drawing all reasonable inferences in the plaintiffs favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court’s jurisdiction.”). Under 28 U.S.C. § 1291, we have jurisdiction to review the district court’s order.
III. DISCUSSION
A. TTP’s and SAA’s Claims Do Not Arise in Respect of the Assessment or Collection of Any Tax.
The FTCA waives the United States’ sovereign immunity for tort claims against the federal government in cases where a private individual would have been liable under “the law of the place where the act or omission occurred.” 28 U.S.C. § 1346(b)(1). Section 2680 provides for several exceptions that “severely limit[ ]” the FTCA’s waiver of sovereign immunity. Morris v. United States, 521 F.2d 872, 874 (9th Cir. 1975). “If a plaintiffs tort claim falls within one of the exceptions, the district court lacks subject matter jurisdiction.” Id. Among § 2680’s several exceptions is § 2680(c), which prevents lawsuits against the federal government for “[a]ny claim arising in respect of the assessment or collection of any tax.”
We have “broadly construed” § 2680(c) to encompass actions taken during the scope of the IRS’s tax assessment and collection efforts. Wright v. United States, 719 F.2d 1032, 1035 (9th Cir. 1983), abrogated on other grounds as recognized by Gasho v. United States, 39 F.3d 1420 (9th Cir. 1994). For example, in Morris, we held that 2680(c) barred not just claims based on literal collection activity, but also a taxpayer’s claim that IRS agents wrongfully told his creditors of his purported tax liability during an audit of his business. 521 F.2d at 874-75. Other circuits also have read § 2680(c) expansively. See Aetna Cas. & Sur. Co. v. United States, 71 F.3d 475, 478 (2d Cir. 1995) (“We understand the § 2680(c) exception to cover .claims arising out of the operation of the government’s mechanism for assessing and collecting taxes. The payment of refunds when due is an integral part of that mechanism.”); Capozzoli v. Tracey, 663 F.2d 654 (5th Cir. 1981) (holding that § 2680(c) barred a lawsuit by taxpayers who alleged that an IRS agent prowled their property and took photos of their residence without permission, during an investigation to determine the extent of damage they claimed as casualty losses on their tax returns).
Section 2680(c) has been read to apply to both civil and criminal investigations into potential tax liability, see Jones v. United States, 16 F.3d 979 (8th Cir. 1994), as well as to suits brought against the IRS by third parties who never had any tax liability, see Perkins v. United States, 55 F.3d 910 (4th Cir. 1995) (barring a wrongful death claim arising from the death of a miner hired by the IRS to retrieve mining equipment to satisfy a federal tax debt); Interfirst Bank Dallas, N.A. v. United States, 769 F.2d 299, 307 (5th Cir. 1985) (“[Section 2680(c) ] gives no indication whatsoever that the exemption is limited ... to claims brought by taxpayers as opposed to third parties.”); Broadway Open Air Theatre, Inc. v. United States, 208 F.2d 257, 259 (4th Cir. 1953) (rejecting the plaintiffs’ argument that § 2680(c) does not apply when the lawsuit “is unrelated to any alleged tax liability between the parties to the suit” (emphasis added)).
*1158 Despite § 2680(e)’s expansive reach, it does not grant the IRS absolute immunity. We previously have rejected the invitation to read the statute as encompassing any activities that “might serve as a deterrent that will facilitate the ‘assessment or collection’ of taxes generally.” See Wright, 719 F.2d at 1035. Even courts that have applied § 2680(c) to claims that, at first blush, seem attenuated from assessment and collection activities have taken pains to emphasize that they “do not intend to suggest that the government is insulated from tort liability for any and all transgressions committed by IRS employees.” Capozzoli, 663 F.2d at 658; see also Perkins, 55 F.3d at 914 (“[T]he breadth of section 2680(c)’s operation is not unlimited.”).
The government argues that its conduct in this case involved the assessment or collection of taxes because it was trying to determine whether taxpayers were claiming bona fide refunds. This argument overlooks our obligation to accept as true the allegations in plaintiffs’ complaint. See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (“We review here a decision, granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint.”). TTP and SAA allege that the IRS already suspected that the individuals under investigation were scam artists who were not entitled to any bona fide refunds. The allegation that the IRS’s efforts were aimed at snaring tax cheats cleanly distinguishes this case from the case on which the government relies, Aetna Casualty & Surety Co., 71 F.3d 475. There, Aetna Casualty argued that it was entitled to part of a tax refund that the IRS had paid to a different taxpayer. Aetna sued the government for tor-tious conversion, id. at 477, and the Second Circuit held, unremarkably, that § 2680(c)’s bar of claims concerning tax assessment and collection efforts also bars claims based on “payment of refunds when due,” id. at 478. Here, the payment of refunds when due is not at issue. Construing the alleged facts in plaintiffs’ favor, the complaint includes fraudsters who filed fake returns, so no refunds were due. Plaintiffs allege that the IRS was not assessing the amount of taxes the filers owed, nor was it attempting to collect taxes from them. Instead, it was conducting a sting operation aimed at snaring tax cheaters intent on stealing funds from the United States treasury.
At oral argument, the government identified Perkins, 55 F.3d 910, as the case that “comes closest” to the facts of this case. But Perkins lends no support to the government’s argument. It is readily distinguishable because it involved a miner hired by the IRS to retrieve a piece of mining equipment in an attempt to satisfy a federal tax debt. See id. at 912. The wrongful death claim in Perkins easily qualified as a claim arising from the government’s tax collection efforts. See id. at 912-13.
The government perfunctorily concedes that the IRS is not entitled to absolute immunity, but goes on to argue that § 2680(c) is intended to bar all lawsuits that “hamper the ... ability of the IRS to conduct its business,” and stretches the definition of § 2680(c) so far that we can discern no limit to its interpretation of the immunity that § 2680(c) affords. In particular, at oral argument the government refused to recognize any distinction between the facts of this case and a hypothetical scenario in which an IRS agent driving a government car runs a stop sign and hits someone. Under the government’s reading of § 2680(c), its exposure to liability for the on-duty auto accident would fall within § 2680(c)’s exception to the waiver of sovereign immunity. By offering no real limit *1159 to the scope of § 2680(c), the government essentially seeks absolute immunity for the IRS’s actions.
The facts alleged in this case describe an elaborate criminal sting operation little different from law enforcement and investigative efforts to catch identity thieves who are stealing bank account information, or cons who are committing health care fraud. Arguably, when Agent Daniels asked Snyder to front the money for the IRS’s sting and cautioned that failing to cooperate would interfere with a criminal investigation, he was not attempting to assess or collect taxes, nor issuing duly owed refunds. Nor were the targets of the sting operation trying to enjoy tax-free income by fudging on reporting requirements or ginning up fake deductions. Instead, they were trying to use false identification to claim “refunds” wholly unconnected to payment of taxes. The IRS convinced Snyder to use SAA’s funds as bait to catch the scam artists and, in exchange for his trouble, Snyder lost both of his businesses.
The IRS revoked TTP’s e-filing privileges despite knowing that Snyder did the responsible thing by stopping payment on checks SAA advanced to Hilton’s clients and that TTP’s e-filing identification number was used in connection with fraudulent returns at the request of the IRS. The government’s briefing does not attempt to tie the cancellation of TTP’s e-filing privileges to any efforts to assess or collect taxes. The only possible links we can see between tax assessment and collection and the suspension of the e-filing privileges is that the e-filing system is part of the IRS’s general mechanism for collecting taxes, and that the revocation of TTP’s e-filing privileges was part of a general effort to deter tax fraud. Neither fact suffices to save the government’s immunity theory. We have previously rejected an interpretation of § 2680(c) so expansive that it would negate 28 U.S.C. § 2680(h), which expressly allows claims for intentional torts such as malicious prosecution by federal investigative or law enforcement officers. See Wright, 719 F.2d at 1035-36.
We are aware of no reported appellate decision that has addressed facts similar to those here, and the government offers no persuasive reason why we should be the first circuit to grant such expansive immunity to the IRS. Granting immunity in this case would allow the FTCA’s waiver of sovereign immunity vis-a-vis the IRS to be wholly subsumed in the § 2680(c) exception. We “read[] no exemptions into the FTCA beyond those provided.” Id. at 1036. Section 2680(c)’s exception to the waiver of sovereign immunity is broad, but it is not unlimited, and the government’s all-encompassing view of it cannot be squared with the statutory text. By its terms, the exception shields only actions taken in connection with efforts to assess or to collect taxes, which were not involved in this case.
B. The Government’s Alternative Arguments Do Not Provide Grounds for Affirming the District Court’s Order.
The government also urges us to affirm the district court’s judgment on four alternative grounds that the district court did not reach. Although “we can affirm the district court on any grounds supported by the record,” Weiser v. United States, 959 F.2d 146, 147 (9th Cir. 1992), none of the government’s arguments merits dismissal at this early stage of litigation.
1. Section 2680(h) Does Not Bar the Claims Because They Do Not Rest on Alleged Misrepresentations.
The government argues that 28 U.S.C. § 2680(h) bars TTP’s and SAA’s claims for negligence, conversion, and failure to restore things wrongfully acquired *1160 because they are premised on misrepresentations by the government. Section 2680(h) establishes an exception to the waiver of sovereign immunity for claims that “aris[e] out of ... misrepresentation.” This exception includes misrepresentations made willfully and misrepresentations made negligently. See United States v. Neustadt, 366 U.S. 696, 702, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).
Section 2680(h) bars claims that focus on the government’s failure to use due care in communicating information, not actions focused on breach of a different duty. Block v. Neal, 460 U.S. 289, 297, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). The plaintiff in Block received federal assistance for a house construction loan, and a federal agency undertook to supervise the construction. Id. at 291-92, 103 S.Ct. 1089. The agency reported to plaintiff that the construction was satisfactory but, after moving in, she discovered numerous defects. Id. at 292, 103 S.Ct. 1089. She sued for negligent supervision under the FTCA. The government argued that § 2680(h) barred her negligence claim. Id. at 293-94, 103 S.Ct. 1089. According to the government, plaintiffs claims were based on misrepresentations about the condition of the house. Id. at 294, 103 S.Ct. 1089. The Supreme Court held that § 2680(h) did not except the government’s waiver of sovereign immunity. Id. at 296-97, 103 S.Ct. 1089. It reasoned that the claim for negligent supervision did not “aris[e] out of misrepresentation” within the meaning of § 2680(h) because the plaintiff did not seek to recover on the basis of misstatements made by the government officials. The duty to use due care supervising construction was separate from any duty the government had to accurately communicate information to the plaintiff. Id. at 297, 103 S.Ct. 1089. “Neither the language nor history of the [FTCA] suggest[s] that when one aspect of the [g]overnment’s conduct is not actionable under the ‘misrepresentation’ exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the [government's conduct.” Id. at 298, 103 S.Ct. 1089. “Any other interpretation would encourage the [government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits.” Id.
Here, § 2680(h) does not shield the government because TTP and SAA do not allege that the IRS obtained their money through deceit. TTP and SAA allege that the IRS wrongfully obtained use of their money during the sting operation and failed to return it. As in Block, any alleged misstatements by the IRS “are not essential to” plaintiffs’ claims, id. at 297, 103 S.Ct. 1089, which primarily rely on the government’s allegedly negligent failure to “take due care to see that Plaintiffs] were reimbursed and indemnified for any monies which they advanced to persons involved in the sting, or allowed Defendant to usé at their request, or which they otherwise lost.” Any “partial overlap” between plaintiffs’ claims and a potential misrepresentation claim does not bring the former within the scope of § 2680(h)’s exception. See id. at 298, 103 S.Ct. 1089.
2. TTP and SAA Have Stated Claims Under California Law for Failure to Restore Things Wrongfully Acquired and for Conversion.
The government argues that TTP and SAA failed to state claims for failure to restore things wrongfully acquired and for conversion. This defense rests on the government’s theory that it never had control over property that belonged to TTP or SAA. But TTP and SAA assert that the IRS coerced Snyder into reissuing checks to the targets of the IRS’s investigation. At this early stage, we cannot determine whether the facts will be as TTP and SAA *1161 allege, but if plaintiffs are able to support their allegations, a fact finder might be able to decide that the government exerted sufficient control over their property to support these claims. See Cal. Civ. Code §§ 654, 1712.
California case law is sparse in these areas, but California defines “ownership of a thing” as “the right of one or more persons to possess and use it to the exclusion of others.” Id. § 654. Even if consent is initially given, a plaintiff can state a claim for failure to restore things wrongfully acquired under § 1712 if the plaintiff later withdraws consent. Similarly, conversion is “the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.” Welco Elecs., Inc. v. Mom, 223 Cal.App.4th 202, 166 Cal.Rptr.3d 877, 882 (2014) (internal quotation marks omitted). “Money may be the subject of conversion if the claim involves a specific, identifiable sum....” Id. Here, the complaint alleges specific sums of money that TTP and SAA allowed the IRS to direct. Although the IRS directed that the money should be allowed to pass into the hands of individuals under investigation rather' than to the IRS itself, the allegation is that the IRS directed the disposition of plaintiffs’ funds. TTP and SAA did not consent to the IRS’s permanent use of these sums, and the IRS never reimbursed them. The complaint’s allegations suffice to state a claim for failure to restore things wrongfully acquired and conversion.
3. TTP and SAA Have Stated a Claim for Abuse of Process Under California Law.
The government also argues that TTP and SAA failed to state a claim for abuse of process. “To establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a wilful act in a wrongful manner.” Coleman v. Gulf Ins. Grp., 41 Cal.3d 782, 226 Cal.Rptr. 90, 718 P.2d 77, 81 (1986). The government argues that plaintiffs cannot satisfy the second prong because they cannot show that the IRS committed a willful act in a wrongful manner.
“[Generally, an action [for abuse of process] lies only where the process is used to obtain an unjustifiable collateral advantage. For this reason, mere vexation or harassment are not recognized as objectives sufficient to give rise to the tort.” Younger v. Solomon, 38 Cal.App.3d 289, 113 Cal.Rptr. 113, 118 (1974). TTP and SAA allege that the IRS issued subpoenas and revoked TTP’s e-filing privileges to intimidate them and cause them to drop claims for a return of their funds. If TTP and SAA had dropped their claims, the IRS would have obtained a collateral advantage — unchallenged conversion of TTP’s and SAA’s mpney. These allegations easily amount to more than “mere vexation or harassment” and survive the government’s motion to dismiss.
4. We Do Not Reach the Government’s Argument That § 2680(a)’s Discretionary Function Exception Bars the Claims.
The government further argues that, because the alleged conduct involved the exercise of a discretionary function, 28 U.S.C. § 2680(a) bars TTP’s and SAA’s claims. Section 2680(a) excepts from the FTCA “[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment, whether or not the discretion involved be abused.” The discretionary function exception involves a two-part test. Alfrey v. United States, 276 F.3d 557, 561 (9th Cir. 2002). First, we ask “whether the chai- *1162 lenged conduct is discretionary, that is, whether it ‘involv[es] an element of judgment or choice.’ ” Id. (alteration in original) (quoting Fang v. United States, 140 F.3d 1238, 1241 (9th Cir. 1998)). This prong “is not met ‘when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow.’ ” Id. (quoting Fang, 140 F.3d at 1241). Second, we ask “whether that judgment is of the kind that the discretionary function exception was designed to shield.” Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)).
TTP and SAA argue that the Federal Rules of Civil Procedure require that they have a chance to conduct discovery on what statutes, regulations, or policies govern an IRS agent’s use of private property in the course of a tax fraud investigation. We agree. The government’s unsupported assertion that it had unfettered discretion to commandeer TTP’s and SAA’s funds is not sufficient. Depending on what discovery yields, the government may be unable to satisfy the first prong of the test for the discretionary function exception. At the very least, some discovery on this issue is warranted. See Fed. R. Civ. P. 56(d).
IV. CONCLUSION
We reverse the district court’s order granting the motion to dismiss and remand for further proceedings in accordance with this opinion.
Appellee shall bear costs on appeal.
REVERSED and REMANDED.

. The government filed a facial attack on the court's jurisdiction, based on the four comers of the complaint. We accept as true all facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor. See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

. The Tucker Act grants exclusive jurisdiction to the Court of Federal Claims for actions sounding in contract against the United States, 28 U.S.C. § 1491(a)(1), .while the FTCA grants exclusive jurisdiction to federal district courts to hear tort claims, 28 U.S.C. § 1346(b)(1).