Filed 8/20/21 Ferra v. Gilmore CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARIA FERRA as Trustee, etc., <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> CHRISTINA FERRA GILMORE et al., <br><br>     Defendants and Respondents. | B303592 <br><br> (Los Angeles County <br> Super. Ct. No. BC722537) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine Lu, Judge. Affirmed in part, reversed in part.

Murphy Rosen and David E. Rosen; Weinstock Manion and Blake A. Rummel; Greines, Martin, Stein & Richland, Cynthia E. Tobisman and Alana H. Rotter, for Plaintiff and Appellant.

Stevenson Law Office, W. Todd Stevenson, Hannah G. Elisha; Klapach & Klapach and Joseph S. Klapach for Defendant and Respondent Christina Ferra Gilmore.

Halavais & Associates and Coby Halavais for Defendants and Respondents Canary Asset Management, Inc., C&H Trust Deed Service, and Coby Halavais.

_____

## I. INTRODUCTION

Plaintiff Maria Ferra,[1] the trustee of the Anthony Ferra Exempt Marital Trust Established Under Instrument dated April 24, 1995 (the Trust), appeals from a judgment of dismissal following the sustaining of demurrers without leave to amend. We reverse as to the causes of action for conversion, violation of Penal Code section 496, subdivision (c), and violation of Civil Code section 1712 against defendant Christina Ferra Gilmore. We otherwise affirm.

## II. BACKGROUND

A.    *Factual Background*

"On demurrer review, we accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*State Dept. of State Hospitals v. Superior Court* (2015)

---

[1]    Because several individuals share the same last name, we will refer to them by their first name for ease of reference.

61 Cal.4th 339, 346.)  We summarize the facts alleged by plaintiff in the first amended complaint as follows.

## 1. Note and Deed of Trust

Mary Lou and Anthony were married and had two daughters, Christina and Sandra.  Christina is the special administrator and executor for Mary Lou's estate.

Mary Lou and Anthony divorced in 1973 and entered into a dissolution settlement agreement (dissolution agreement).  As part of that agreement, Anthony executed a note in the amount of $90,900, payable to Mary Lou.  The note was secured by a deed of trust on the property located at 6349 Colfax Avenue in North Hollywood (the Property).  Under the terms of the dissolution agreement, Anthony promised to satisfy the note by making monthly payments, with the last payment due in May 1983.  Paragraph 6(c)(4) of the dissolution agreement provided that "'[i]nterest is to accrue on the unpaid balance at the rate of 7 [percent] per annum commencing November 1, 1978.'"

On December 19, 1975, Mary Lou filed an Application for Issuance of Writ of Execution (the 1975 application) in the divorce proceeding, in which she declared under penalty of perjury that Anthony had made installment payments totaling $12,795 between July 1974 and September 1975, out of a total of $17,600 owed to date.

3

2.    Mary Lou's 1982 Complaint and Stipulated
      Judgment

In 1982, Mary Lou filed a complaint against Anthony to enforce the terms of the dissolution agreement. Mary Lou alleged that Anthony failed to disclose community assets during the dissolution proceedings. She did not, however, allege that Anthony failed to pay any amounts due under the note. Following the filing of the 1982 complaint, a stipulated judgment was entered on October 27, 1986 (1986 stipulated judgment). The 1986 stipulated judgment declared, in part, that it resolved all issues in the case. Although Mary Lou did not again demand payments under the note, she did not reconvey the deed of trust. The 1986 stipulated judgment was modified in 1987 (1987 agreement).

Mary Lou died on August 11, 2007. At that time, Christina did not open a probate and did not contact Maria about enforcement of the deed of trust or the 1987 agreement.

3.    The Trust

Following his divorce, Anthony married Maria. In 1995, Anthony established a revocable trust and amended it on May 28, 1996 (the revocable trust). In 1996, Christina signed a settlement agreement in which she acknowledged that there were no encumbrances on the Property.

Upon Anthony's death, the revocable trust was divided into subtrusts, including the Trust. The Trust included the Property as one of its assets.

4

4.    Sale of the Property

In 2017, as Maria made preparations to sell the Property, her counsel discovered that the deed of trust had not been reconveyed. Maria's counsel contacted Christina and demanded that she reconvey the deed of trust. Christina did not do so and instead took action to enforce the note, which she knew had been extinguished.

On August 17, 2017, Maria sold the Property to Victory Colfax, LLC (Victory Colfax), a California limited liability company. Victory Colfax's title insurer, Fidelity National Title Group, Inc. (Fidelity), required Maria to enter into an indemnity and security agreement, which obligated Maria to satisfy or eliminate any claim made by Christina on the note or deed of trust. To ensure that she satisfied any claim, Fidelity required Maria to deposit her own funds with it.

5.    Enforcement of Note and Deed of Trust

Christina continued to demand payment on the note. On August 25, 2017, C&H Trust Deed Service, as the successor trustee or authorized agent, recorded a notice of default and election to sell the Property pursuant to the deed of trust. Halavais is the founder and owner of C&H Trust Deed Service and an officer and director of Canary Asset Management, which supervises foreclosures conducted by C&H Trust Deed Service (collectively, C&H defendants).

In September 2017, Christina's counsel provided a copy of the 1975 application to Maria's counsel, which, as described

5

above, showed that Anthony had paid off at least $12,975 on the note.

On November 30, 2017, C&H defendants issued a notice of trustee's sale on the Property.  In the notice of trustee's sale, Christina demanded payment of $1,511,352.80 to prevent the sale from proceeding.  C&H defendants calculated the payment amount by applying compound interest to the entire amount of the note, without a reduction for any payoff by Anthony.

### 6.    Maria's Payments to Christina Under Deed of Trust

On February 5, 2018, after learning that Christina had initiated foreclosure proceedings on the deed of trust, Fidelity sent a letter to Maria's counsel, demanding that she pay the amount required by Christina.  Maria sent funds to Fidelity and authorized it to release those funds and the additional amounts that she previously deposited with it, to Christina.  In total, Maria paid Christina over $1.5 million.  On February 22, 2018, after Christina received the funds, C&H Trust Deed Service reconveyed the deed of trust.

B.    *Procedural History*

On September 20, 2018, Maria filed a complaint against defendants.  Christina and C&H defendants demurred; and on April 25, 2019, the trial court sustained the demurrers with leave to amend.

On May 15, 2019, Maria filed the first amended complaint, the operative complaint.  She alleged causes of action for: conversion; civil penalties under Penal Code section 496,

6

subdivision (c); unlawful exaction under Civil Code section 1712; restitution; and for a constructive trust. Maria alleged that Christina had wrongfully forced her to tender over $1.5 million[2] in funds to which Christina was not entitled. Maria also alleged that C&H defendants aided and abetted Christina's unlawful acts.

On June 19, 2019, Christina demurred to the first amended complaint, asserting, among other things, that Maria lacked standing to bring her suit. According to Christina, Victory Colfax assumed Maria's obligation under the deed of trust when it purchased the Property; and, because Victory Colfax, together with Fidelity, decided to satisfy the lien rather than challenge it, Maria had no remedy against Christina.

On July 26, 2019, C&H defendants also demurred to the first amended complaint. They joined in and adopted the arguments raised in Christina's demurrer and also separately argued that they were protected from liability under Civil Code section 2924, subdivisions (b) and (d).

On October 1, 2019, the trial court sustained defendants' demurrers without leave to amend. The court agreed with defendants that Maria failed to allege standing to sue. The court reasoned that "[Maria's] liability as an indemnitor is an insufficient interest to give [her] standing to litigate the indemnitee's (Victory Colfax's) liabilities." The court further concluded that Maria failed to allege any cause of action. Finally, the court denied leave to amend.

On November 4, 2019, the trial court entered the judgment, from which Maria timely appealed.

---

[2]     Specifically, Maria alleged that defendants demanded $1,598,429,64 and that Maria paid this amount.

7

# III. DISCUSSION

## A.  *Demurrer Legal Standard*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591 . . . .)  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  (*Speegle v. Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 . . . .)  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  (See *Hill v. Miller* (1966) 64 Cal.2d 757, 759 . . . .)  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  (*Kilgore v. Younger* (1982) 30 Cal.3d 770, 781 . . . ; *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 . . . .)  The burden of proving such reasonable possibility is squarely on the plaintiff.  (*Cooper v. Leslie Salt Co., supra*, [70 Cal.2d] at p. 636.)"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## B.  *Standing*

Maria contends that the trial court erred in concluding that she failed to sufficiently allege standing to pursue her claims.  "In

general terms, in order to have standing, the plaintiff must be able to allege injury—that is, some 'invasion of the plaintiff's legally protected interests.'" (*Angelucci v. Century Supply Club* (2007) 41 Cal.4th 160, 175.) To establish standing under California law, the plaintiff "'must be able to demonstrate that . . . she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical.'" (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 814.) Here, Maria alleged that as a result of defendants' wrongful conduct, she tendered a payment of over $1.5 million to Christina. These allegations established a concrete and actual interest sufficient to survive demurrer.

In defendants' view, Maria, as an indemnitor, cannot sue because "an indemnitor lacks standing to sue over the validity of an indemnitee's liability." The cases cited by defendants, however, do not support such a broad proposition. For instance, defendants cite *American Home Ins. Co. v. Travelers Indemnity Co.* (1981) 122 Cal.App.3d 951, in which a plaintiff, an insurance company, asserted that a company that it insured (Sales), should be included in the indemnity clause of an insurance contract that had been entered into by third parties. (*Id.* at pp. 959–960.) The court concluded that the plaintiff lacked standing to assert its claims because the plaintiff "was neither a contracting party nor an intended beneficiary of [the insurance contract containing the indemnity clause]. More importantly, Sales was not a party to either the insurance contract or the underlying" agreement among the other third parties. (*Id.* at p. 962.) The court also concluded that Sales was not an intended beneficiary of the insurance contract. (*Id.* at p. 967.) Thus, the plaintiff lacked standing to seek reformation of the insurance contract. (*Id.* at

9

p. 968.)  The court did not, however, consider the specific issue here:  whether an indemnitor to an indemnity agreement can sue a third-party defendant for injuries sustained by the indemnitor.

Defendants also cite an opinion from the Federal Circuit Court of Appeals, *Penda Corp. v. United States* (Fed. Cir. 1994) 44 F.3d 967 (*Penda Corp.*), in support of their contention.  There, a plaintiff contractor was awarded a contract to provide the United States Postal Service with plastic pallets.  (*Id.* at p. 969.)  The contractor agreed to indemnify the United States for any damages.  (*Ibid.*)  A patent holder sued the United States, claiming that the pallets infringed a patent, and the contractor joined the lawsuit as a third-party defendant.  (*Ibid.*)  The Court of Federal Claims entered judgment in favor of the patent holder and against the United States, which chose to satisfy the judgment rather than appeal.  (*Ibid.*)  The contractor appealed, challenging the court's finding that the patent was valid.  (*Ibid.*)  The court of appeals dismissed the appeal, reasoning:  "Even if [the contractor] is ultimately held liable to the Government under their indemnification agreement, [the contractor's] pecuniary interest in this case is indirect and consequential, rather than direct and immediate."  (*Id.* at p. 972.)

Unlike in *Penda Corp., supra*, 44 F.3d 967, Maria does not appeal from a judgment against her indemnitee, Victory Colfax.  Rather, she seeks to bring her own claims against defendants.  Moreover, federal and California law differ on the requirements for standing:  "Article III of the federal Constitution imposes a 'case-or-controversy limitation on federal court jurisdiction,' requiring "'the party requesting standing [to allege] 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues.'"

10

[Citation.]  There is no similar requirement in our state Constitution.  [Citation.]"  (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1117, fn. 13.)  Thus, *Penda Corp.* is inapposite.

Defendants also contend that once Maria sold the property to Victory Colfax, "she no longer had standing to challenge Christina's foreclosure against [the] Property."  We disagree.  Defendants' argument would be persuasive if Maria sought to quiet title to the Property.  (See *Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 326 ["'In a quiet title action the plaintiff must prove his title in order to recover'"].)  Maria does not, however, seek to quiet title but to recover over $1.5 million she paid as a result of defendants' allegedly wrongful acts.

Further, case authority does not support defendants' contention that plaintiffs, upon the sale of property, lose standing to challenge a foreclosure of that property.  (See, e.g., *Majd v. Bank of America, N.A.* (2015) 243 Cal.App.4th 1293, 1299, 1307 [wrongful foreclosure cause of action initiated after sale occurred]; *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1246–1247 [wrongful foreclosure cause of action to set aside trustee's sale].)  Accordingly, we conclude that Maria has sufficiently alleged she was aggrieved by defendants' conduct.

C.    *Civil Code Section 2924*

C&H defendants separately argue that their conduct as a foreclosure trustee is privileged under Civil Code section 2924.  We agree.

Civil Code section 2924, subdivision (d) provides in pertinent part:  "All of the following shall constitute privileged

11

communications pursuant to [Civil Code s]ection 47: [¶] (1) The mailing, publication, and delivery of notices as required by this section. [¶] (2) Performance of the procedures set forth in this article." Civil Code section 47, subdivision (c) protects "a communication, without malice, to a person interested therein, (1) by one who is also interested." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 336, 339.) "[M]alice is defined as actual malice, meaning "'that the publication [or communication] was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication [or communication] and therefore acted in reckless disregard of the plaintiff's rights.""" (*Id.* at p. 336.) "'[M]ere negligence in making "a sufficient inquiry into the facts on which the statement was based" does [not], of itself, relinquish the privilege. "Mere inadvertence or forgetfulness, or careless blundering, is no evidence of malice." [Citation.] [¶] While "[the] concept of negligence is inherent in the issue of probable cause" [citation], the decisions long ago recognized that to constitute malice the negligence must be such as "evidenced a wanton and reckless disregard of the consequences and of the rights and of the feelings of others" [citation].' [Citations,]" (*Id.* at p. 344.)

C&H defendants' allegedly wrongful conduct was comprised of issuing notices and making a payoff demand which are subject to the communication privilege set forth at Civil Code section 2924, subdivision (d), absent an allegation that the communications were made with malice. At bottom, Maria's complaint is that because she provided information to Christina that the note had been repaid, C&H defendants "had more than enough information to determine that the [n]ote had been

12

extinguished."  But an allegation that C&H defendants failed adequately to investigate the validity of the note before undertaking action to enforce the deed of trust secured by it is insufficient to demonstrate malice.  (See *Kachlon v. Markowitz, supra*, 168 Cal.App.4th at p. 344.)  Thus, the communication privilege under Civil Code section 2924, subdivision (d) applies and the trial court did not err by sustaining the demurrer by C&H defendants.

D.    *Conversion*

We next consider whether Maria sufficiently alleged a claim for conversion against Christina.  "'"'Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion claim are:  (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages . . . .'"'"  (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 650; see also *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 ["'Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved'"].)  Maria sufficiently alleged that she had an ownership interest in over $1.5 million that she paid to Christina through Fidelity.

Maria also sufficiently alleged that Christina engaged in wrongful acts to obtain those funds.  "'Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.  It is not necessary that there be a manual taking of the property; it is only

13

necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.'" (*Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal.App.3d 737, 747.) Here, Maria alleged that Christina obtained over $1.5 million of Maria's funds by initiating a foreclosure sale pursuant to a deed of trust, which was secured by a note that was either fully or partially satisfied. Such a foreclosure sale would constitute a wrongful act. (See *Beverly Finance Co. v. American Cas. Co. of Reading, Pa.* (1969) 273 Cal.App.2d 259, 264 ["an unjustified assertion of title in the chattel may in and of itself constitute a conversion"].)

Finally, Maria alleged Christina's wrongful acts damaged her. Defendants contend that Maria is barred by the sham pleading doctrine from alleging that she made the demanded payment for "'the sole and express purpose'" of satisfying the Trust's liability under the note and deed of trust because she previously alleged that she paid the money in order to satisfy her obligation to indemnify Victory Colfax. Even if Maria paid the money, in part, because of her obligation to do so under the indemnification agreement, such a motivation does not nullify Maria's allegation that Christina's wrongful act of initiating the foreclosure sale caused Victory Colfax to demand that Maria satisfy her obligations under the indemnification agreement. Indeed, multiple factors could have caused Maria to send over $1.5 million to Christina, and "[c]ausation is generally a question of fact for the jury, unless reasonable minds could not dispute the absence of causation." (*Lombardo v. Huysentruyt* (2001) 91 Cal.App.4th 656, 666.) Accordingly, we find the trial court erred by sustaining Christina's demurrer to the conversion cause of action.

14

E.  *Extortion*

Maria next contends that she sufficiently alleged a claim for extortion pursuant to Penal Code section 496, subdivision (c), which allows treble damages for any violation of section 496, subdivisions (a) and (b).  Penal Code section 496, subdivision (a) prevents any person from "buy[ing] or receiv[ing] any property that has been stolen or that has been obtained in any manner constituting theft or extortion . . . ."  A criminal conviction is not a prerequisite to recover civil damages under Penal Code section 496, subdivision (c).  (*Switzer v. Wood* (2019) 35 Cal.App.5th 116, 126; but see *Siry Investment, L.P. v. Farkhondehpour* (2020) 45 Cal.App.5th 1098, 1134, review granted July 8, 2020, S262081 [finding Pen. Code, § 496 does not permit treble damages for property obtained wrongfully by fraud, misrepresentation, or conversion].)

On appeal, Maria contends that Christina extorted her in violation of Penal Code section 496.[3]  "Extortion is the obtaining

---

[3]  In the original complaint, Maria alleged defendants' conduct constituted either theft or extortion.  In the first amended complaint, Maria alleged defendants wrongfully obtained the demanded payment of over $1.5 million by theft.  But, when opposing the demurrers to the first amended complaint, Maria also argued defendants' wrongful conduct constituted extortion, and the trial court expressly considered and rejected the argument.  Maria asserts only an extortion theory on appeal.  When reviewing a general demurrer under the de novo review standard, we consider whether plaintiff states a cause of action under any possible legal theory, whether pled in the operative complaint or raised in the opening appellant's brief.  (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1244.)

of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518, subd. (a).) Penal Code section 519 enumerates five types of fear sufficient for extortion: "1. To do an unlawful injury to the person or property of the individual threatened or of a third person. [¶] 2. To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime. [¶] 3. To expose, or to impute to him, her, or them a deformity, disgrace, or crime. [¶] 4. To expose a secret affecting him, her, or them. [¶] 5. To report his, her, or their immigration status or suspected immigration status." Only threats that fall into one of these enumerated categories will support a charge of extortion. (*People v. Choynski* (1892) 95 Cal. 640, 642; *People v. Umara* (2006) 138 Cal.App.4th 625, 638.)

On appeal, Maria asserts that Christina extorted her by threatening to "unlawfully injure the Property." Defendants observe that, as pleaded, "Christina did not make any threats to foreclose against Maria's property (she foreclosed against [Victory Colfax's] Property)." Extortion, however, includes the threat "[t]o do an unlawful injury to the . . . property of . . . a third person." (Pen. Code, § 519.) Therefore, the fact that the threat of foreclosure was made against a third party does not prevent Maria from asserting a claim for extortion. (See *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1299 ["The third person referred to in subdivision 1 [of Penal Code section 519] need not have a special relationship to the individual threatened"].) Further, as we discuss above, Maria sufficiently alleged that Christina's threats of foreclosure were wrongful. (See *People v. Kaufman*

(2017) 17 Cal.App.5th 370, 395 [threat for extortion must be something that person did not have legal right to do].)

We next consider whether Maria sufficiently alleged causation. "To constitute extortion the victim must consent, albeit it is a coerced and unwilling consent, to surrender of his property; the wrongful use of force or fear must be the operating or controlling cause compelling the victim's consent to surrender the thing to the extortionist." (*People v. Goodman* (1958) 159 Cal.App.2d 54, 61; accord, *Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1171.) Whether Christina's threat of foreclosure was the operating or controlling cause compelling Maria's payment is a factual question and "'depends on the nature of the threat and the susceptibility of the victim.'" (*People v. Bollaert* (2016) 248 Cal.App.4th 699, 725.) For purposes of demurrer, we conclude Maria sufficiently alleged that Christina's threat of foreclosure was the operating or controlling cause compelling Maria's payment of funds. Accordingly, the trial court erred by sustaining Christina's demurrer to the claim for violation of Penal Code section 496, subdivision (c).

F.     *Unlawful Exaction*

Next, we consider whether Maria sufficiently alleged a violation of Civil Code section 1712, which provides: "One who obtains a thing without the consent of its owner, or by a consent afterwards rescinded, or by an unlawful exaction which the owner could not at the time prudently refuse, must restore it to the person from whom it was thus obtained, unless he has acquired a title thereto superior to that of such other person, or unless the transaction was corrupt and unlawful on both sides."

17

Civil Code section 1712 supports an independent claim for relief. (See *Philpott v. Superior Court of Los Angeles County* (1934) 1 Cal.2d 512, 524 [finding Civ. Code, § 1712 "seems to provide for a legal action" in a case in which plaintiff asks for return of consideration following rescission of contract]; see also *Snyder & Assocs. Aquisitions LLC v. United States* (9th Cir. 2017) 859 F.3d 1152, 1161 [finding plaintiff can state a claim under Civ. Code, § 1712].)

"Exaction" is defined as "[t]he act of demanding more money than is due; extortion." (Black's Law Dict. (11th ed. 2019).) As discussed above, Maria sufficiently alleged defendants extorted her by refusing to reconvey the deed of trust, demanding payment on the note, and initiating a foreclosure sale pursuant to the deed of trust. The trial court thus erred by sustaining Christina's demurrer to this cause of action.

G.     *Constructive Trust and Restitution*

We conclude the trial court did not err in sustaining the demurrer to Maria's remaining claims for constructive trust and restitution because both are remedies, not causes of action. (*Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 362; *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1485 [imposition of a constructive trust is an equitable remedy]; *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 661 ["There is no freestanding cause of action for 'restitution' in California"].)[4]

---

[4]     On appeal, Maria's arguments concerning the trial court's denial of leave to amend were directed to the issue of standing

18

## IV.  DISPOSITION

The judgment is reversed in part as to plaintiff Maria Ferra's causes of action for conversion, violation of Penal Code section 496, subdivision (c), and violation of Civil Code section 1712 against defendant Christina Ferra Gilmore; and the matter is remanded for further proceedings consistent with this opinion. The judgment is otherwise affirmed.  The parties are to bear their own costs.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.

---

only.  Thus, we do not address whether the court erred by denying leave to amend as to the remaining claims.

19